# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Cindy Hoedel and Scott Yeargain, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) 19-cv-2443 |
| v. | ) |
| | ) |
| | ) |
| Dustin Kirk, in his individual capacity. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiffs Cindy Hoedel and Scott Yeargain, by and through their attorneys, for their Complaint against Dustin Kirk, in his individual capacity, state as follows:

Nature of the Action

1. This action arises under the First and Fourteenth Amendments of the Constitution of the United States, which deprivation of rights is actionable under 42 U.S.C. § 1983.

2. On June 12, 2018, Defendant Dustin Kirk, while serving as Deputy General Counsel to the Kansas Corporation Commission ("KCC" or "the Commission"), filed a baseless consumer protection complaint against Plaintiffs Hoedel and Yeargain in retaliation for their efforts protesting injection well[1] applications and associating with other concerned citizens for the purpose of vindicating their rights before the KCC.

3. Defendant Kirk's complaint alleged that Plaintiffs Hoedel and Yeargain had engaged in the unauthorized practice of law because they shared information, advice, and sample filings

---

[1] An injection well is used to place fluid underground into porous geologic formations. Injection wells are used to "dispose" of fracking fluid wastes.

with other concerned citizens protesting injection well applications pending before the KCC. Defendant Kirk had no legitimate basis for believing Hoedel or Yeargain were engaged in the unauthorized practice of law.

4. Defendant Kirk's investigation chilled Plaintiffs' First Amendment protected petition activities for the pendency of the two-month investigation, undermined their efforts to associate for the purpose of obtaining legal redress, and cost Ms. Hoedel $20,000 in lost income. Defendant's actions also caused both Hoedel and Yeargain immense anxiety and emotional distress.

## Jurisdiction and Venue

5. The Court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1331 because it involves the deprivation of rights secured by the United States Constitution in violation of 42 U.S.C. §1983.

6. This Court has personal jurisdiction over Defendant because he resides in and conducts business in the State of Kansas.

7. Venue is proper in this district because the violations took place in this district and the Defendant resides in this district.

## Parties

8. Plaintiff Cindy Hoedel is a Kansas resident who lives in Chase County. She is a contract researcher and journalist who spent twenty years working for the *Kansas City Star*. Hoedel became interested in KCC proceedings in 2017 after she experienced earthquakes at home caused by fracking. She filed a number of protests with the KCC to oppose injection well sites near her home in Mattfield Green, Kansas and has coordinated with fellow activists to

file objections to proposed injection well applications across Kansas. As a result of Kirk's retaliation, Hoedel has lost income, experienced anxiety and emotional distress, and been unable to continue her collaborative work with other activists seeking legal redress before the KCC.

9. Plaintiff Scott Yeargain is a Kansas resident who lives in Franklin County. He has a PhD in Philosophy and lives on a small farm outside of Ottawa, Kansas. He has protested over a dozen injection well applications in KCC proceedings since 2016. Yeargain has coordinated with other protestants challenging injection sites in KCC proceedings. Kirk's retaliation has undermined Mr. Yeargain's ability to collaborate with other protesters seeking legal redress before the KCC.

10. Defendant Dustin Kirk is a resident of Kansas and, at all relevant times, was the Deputy General Counsel for KCC and acting under the color of state law.

Factual Allegations

*KCC Oil Protests*

11. KCC is the state agency responsible for regulating oil and gas drilling in Kansas. An oil or gas operator must file an application for permit with the KCC to open an injection well.

12. As part of the permitting process, the oil company must notify surrounding landowners and the KCC provides notice to the general public. Interested parties have the right to protest applications if they can articulate a reason why the proposed injection plan will damage oil, gas, or water resources. If a protest is filed, KCC can hold a hearing at which all interested parties can participate after being provided notice.

13. Prior to a KCC hearing, it is common for KCC's counsel to convene a prehearing conference. The Commission's staff attorneys preside over the prehearing conferences. KCC uses

prehearing conferences to schedule pre-hearing deadlines, consolidate protests, and identify witnesses.

14. After the prehearing conference, the oil company applying to the KCC can move to dismiss protestants who lack standing or have otherwise improperly filed a challenge. Protestants can file response briefs defending their right to be involved. They can also file pre-written testimony and request written discovery.

15. The full commission presides over injection well hearings and will issue written findings and recommendations ruling on protestants' standing and determining whether to approve or deny an injection well application.

*Hoedel Protests*

16. On February 9, 2017, Ms. Hoedel filed her first protest with KCC opposing Quail Oil's application to open a well in Morris County. Hoedel's protest received significant media coverage and increased public scrutiny of the KCC's permitting process.

17. In June 2017, Ms. Hoedel filed a protest challenging an injection well application in Greenwood County.  Hoedel coordinated her complaint filing with 9 other individual protestants. Defendant Kirk was the presiding officer in the action and convened the prehearing conference call. At no point in the proceedings did Defendant Kirk express concerns that Ms. Hoedel's joint participation in the proceedings constituted the unauthorized practice of law.

18. Throughout 2017 and 2018, Ms. Hoedel's activism before the commission received consistent press coverage, including her discovery that KCC had improperly issued permits in the past.[2]

19. In the Spring of 2018, Ms. Hoedel filed protests against RJM Company's applications for two injection sites in Barton County and Defendant Kirk was assigned as the presiding officer in the prehearing phone conferences in both matters. A combined 40 protestants objected to RJM's applications.

20. On May 7 and 8, 2018, Ms. Hoedel sent emails regarding the RJM Company proceedings. In her May 7, 2018 email, Ms. Hoedel notified the other protestants that they would need to join the pre-hearing conference to ensure that they would not be removed from the docket. In her May 8, 2018 email, Ms. Hoedel notified the other protestants that she typically pre-files testimony, offering to provide a sample to other protestants so they could "write whatever you want to say." Defendant Kirk was copied on both emails.

21. On May 15, 2018, Defendant Kirk presided over the pre-hearing conference call for the RJM applications. At no point did Mr. Kirk, express a concern that Ms. Hoedel's coordinated efforts with fellow protestants constituted the unauthorized practice of law. At no point on the call did Hoedel represent that she was speaking on behalf of any of the other protestants.

22. On June 12, 2018, Defendant Kirk reported Ms. Hoedel to the Attorney General for engaging in the unauthorized practice of law, attaching as evidence her May 7 and May 8 emails offering a written testimony sample and advising people they must attend the call to avoid being removed from the docket.

---

[2] Celia Llopis-Jepsen, *Kansas Energy Officials Review Legal Options After Errors Found In Oil Wastewater Permits*, KCUR 89.3 (Nov. 1, 2017), *available at* https://www.kcur.org/post/kansas-energy-officials-review-legal-options-after-errors-found-oil-wastewater-permits.

*Yeargain Protests*

23. Mr. Yeargain and his wife, Polly Shteamer, have filed a number of protests challenging injection applications to KCC, including a number of successful challenges that caused an oil company's application to be denied.

24. In May 2018, Mr. Yeargain was one of several protestants opposing Utah Oil's injection well application. Defendant Kirk was the presiding officer in the matter.

25. Defendant Kirk indicated that the pre-hearing conference might occur when Mr. Yeargain's co-protestants Ken and Susan Petersen would be travelling abroad. Because the conference only concerned scheduling, they asked Mr. Yeargain if he could stand in for them. Mr. Yeargain responded that he did not know whether he would be permitted to cover the call but told the Petersens that they could ask Defendant Kirk.

26. Ken Petersen emailed Defendant Kirk on May 12, 2018, explaining their conflict and that they would like to designate Mr. Yeargain to relay their dates of availability during the preconference hearing.

27. On May 14, 2018 at 2:53 PM, Defendant Kirk replied to Mr. Petersen that "Mr. Yeargain is not a Kansas licensed attorney and therefore cannot represent other individuals in these proceedings…I cannot guarantee that Mr. Yeargain's participation on your behalf will secure your position in the docket."

28. Thirteen minutes later, Defendant Kirk emailed Chief Deputy Attorney General, Jeffrey Chanay, expressing a concern about a "hot topic" consumer protection violation in the KCC's quasi-judicial proceedings. Chanay referred him to Jim Welch, the Consumer Protection Division Deputy.

29. On June 12, 2018, Defendant Kirk filed a formal complaint with the Attorney General's office alleging that Mr. Yeargain had engaged in the unauthorized practice of law, citing Ken Petersen's May 14th email as his only evidence.

*Attorney General Complaint*

30. Defendant Kirk spent nearly a month developing his allegations against Ms. Hoedel and Mr. Yeargain. Following his initial outreach to Mr. Chanay on May 14, 2018, he spoke with Lynette Baker in the Attorney General's office on June 11, 2018 and formally filed his complaint on June 12.

31. Defendant Kirk's email to Ms. Baker explained that he knew the emails and pleading he provided as evidence of the unauthorized practice of law "was pretty minimal to go on" but insisted "we do feel that the relevant conversations demonstrate that a non-licensed individual is drafting or sharing legal pleadings for filing and use."

32. All of Defendant Kirk's correspondence was conducted from his official KCC email address [d.kirk@kcc.ks.gov](mailto:d.kirk@kcc.ks.gov) and all communications with the Attorney General's office were in made in his capacity as the preconference hearing officer for KCC.

33. As an attorney, Defendant Kirk knew, should have known, or could have easily determined through minimal research that Ms. Hoedel and Mr. Yeargain's conduct did not constitute the unauthorized practice of law.

34. On July 12, 2018, Shawna Meyer of the Attorney General's office notified Mr. Yeargain and Ms. Hoedel that they were under investigation and requested a response. When Ms. Hoedel requested a copy of the complaint, Ms. Meyer sent her the May 7 and May 8, 2018 emails that Defendant Kirk attached to his complaint as evidence but nothing else.

35. It took Ms. Hoedel six days to discover the origin and nature of the complaint. The Attorney General's office insisted that she provide a response to the allegations.

36. The Attorney General's office closed its investigation in September 2018. For the duration of the investigation, Ms. Hoedel experienced significant anxiety and emotional distress as a result of the investigation. She agonized about the impact a criminal record or civil action against her would have on her work and the expenses related to defense of such an action. Ms. Hoedel was also running for a seat on the Chase County Commission at the time—a race which was adversely impacted and ultimately undermined by Defendant Kirk's allegations. Additionally, Ms. Hoedel lost $20,000 worth of income from her work as a freelance public relations consultant, lost her race for county commissioner and the associated salary, and lost future income from clients not wanting to do business with her on the basis of allegations that she broke the law.

37. Defendant's complaint and the resultant Attorney General investigation also undermined Ms. Hoedel's advocacy efforts. Ms. Hoedel has been successful in her environmental activism because she has built a reputation as a reasonable, respectful, and law-abiding citizen. Defendant Kirk's allegations and the subsequent Attorney General investigation portrayed Ms. Hoedel as an extreme radical and compromised her credibility as an advocate.

38. Mr. Yeargain also experienced mental distress as a result of the investigation. He worried about his ability to pay the costs of his legal defense and the impact the investigation would have on his standing in the community. Mr. Yeargain rents property and sells cows, both business endeavors where his reputation for integrity and good faith are critical for success. He also holds seats on both the Kansas Water Office advisory board for Marias des Cynges

and the Franklin County Democratic Central Committee. Both of Mr. Yeargain's public service positions require him to remain in good moral standing in his community.

39. Mr. Yeargain's fears about damage to his reputation also extend to the efficacy of his environmental advocacy work. A reputation for integrity and honesty is essential to Mr. Yeargain's success challenging injection wells before the KCC where the accuracy of his data and legal applications are regularly at issue. The same reputation of integrity is necessary to mobilize other citizens who need to be convinced about the potential threat certain injection wells might pose.

40. Both Ms. Hoedel and Mr. Yeargain ceased or curtailed their coordinated advocacy activities before the KCC during the investigation and have significantly reduced efforts to provide assistance to fellow activists or jointly protest injection sites out of a fear that they would draw additional complaints for alleged unauthorized practice of law. A number of other activists have also expressed reservations about participating in hearings for fear of being the subject of investigation.

41. As a result of Defendant Kirk's complaint, Ms. Hoedel has been reluctant to revive any joint advocacy efforts before the KCC and has taken proactive steps to minimize her association with other protestants. In particular, Ms. Hoedel has dropped communication with nearly 50 citizens and more than 20 lawmakers that she had previously rallied in support of her KCC advocacy work to protect them from possible retaliation. Additionally, as a result of Defendant Kirk's conduct, she started noting that she is not a lawyer on all of her communications with the KCC.[3]

---

[3] Kansas City Star Editorial Board, *Activists raised questions about a state agency. Now, the Kansas AG is investigating them*, KANSAS CITY STAR (Aug. 22, 2018), *available at* https://www.kansascity.com/opinion/editorials/article217065085.html.

42. Ms. Hoedel's fear of future retaliation has been bolstered by KCC spokesperson Linda Berry's statement that the commission did not intend to take any actions to prevent future baseless reports: "Any attorney has the ability to file a complaint if they believe someone is practicing law without a [license]. That's not something that would be prohibited by any attorney who wanted to do that."[4]

43. Mr. Yeargain has also been fearful to continue collaborative protest work before the KCC. He warns other activists that they may be targeted if they participate in protests.

44. Defendant's complaint has therefore weakened Plaintiffs' ability to effectively protest well applications and chilled the exercise of their First Amendment right to join together for the purpose of obtaining legal redress.

Claims for Relief
**Count 1**
**(Violation of U.S. Const. Amend. I)**

45. Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs as if fully set forth herein.

46. The foregoing actions by the Defendant violate 42 U.S.C. § 1983 and the First Amendment of the United States Constitution.

47. The First Amendment of the United States Constitution guarantees all citizens freedom of association and the right to petition the government, including the right to associate with others for the purpose of assisting with litigation.

48. The First Amendment also protects Plaintiffs against retaliation for engaging in constitutionally protected activity.

---

[4] Ryann Brooks, *A Citizen's Fight*, EMPORIA GAZETTE (Aug. 25, 2018), *available at* http://www.emporiagazette.com/latest_news_and_features/article_277569db-f66a-540c-9c91-7c3ae2b2114e.html.

49. Defendant Kirk's baseless complaint to the Kansas Attorney General in response to Plaintiffs' assistance to other activists and coordinated efforts to protest injection wells has chilled their advocacy efforts before the KCC and constitutes unlawful retaliation under the First Amendment.

50. Defendant Kirk's retaliatory conduct also violates Plaintiffs' rights to free speech, association, and to petition the government for redress guaranteed by the First and Fourteenth Amendments of the Constitution.

## Prayer for Relief

WHEREFORE, Plaintiffs demand judgment against Defendant on each Count of the Complaint and the following relief:

a. A declaration that Defendant's Attorney General Complaint alleging Ms. Hoedel and Mr. Yeargain had engaged in the unauthorized practice of law violated the First Amendment of the Constitution;

b. An order that Defendant pay compensatory damages resulting from Defendant's violations of Plaintiffs' constitutional rights and the resulting loss of income, harm to their reputation, and emotional distress;

c. An award of Plaintiffs' attorneys' fees as provided for under 42 U.S.C. §1988; and

d. Any such other and further relief as the Court deems just and proper.

Dated: August 1, 2019

Respectfully Submitted,

By:   /s/ Lauren Bonds          
Lauren Bonds, KS No. 27807
Zal Kotval Shroff, KS No. 28013
ACLU Foundation of Kansas
6701 W. 64th Street, Ste. 210
Overland Park, KS 66202
Phone: (913) 490-4100
Fax: (913) 490-4119
lbonds@aclukansas.org
zshroff@aclukansas.org

ATTORNEYS FOR THE PLAINTIFFS