UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CINDY HOEDEL and SCOTT YEARGAIN,

      Plaintiffs,

      v.                             Case No. 19-2443-HLT

DUSTIN KIRK,

      Defendant.

## **ORDER**

The plaintiffs, Cindy Hoedel and Scott Yeargain, allege in this civil-rights case that the defendant, Dustin Kirk, who serves as deputy general counsel for the Kansas Corporation Commission ("KCC"), filed a baseless consumer-protection complaint with the Kansas Attorney General in retaliation for their protesting injection-well applications before the KCC.[1]  Plaintiffs have filed a motion to amend their complaint (ECF No. 18), seeking to add as defendants four former and current KCC employees.  Although Kirk hasn't opposed this motion, the proposed defendants have filed a motion to intervene (ECF No. 21) and also have opposed the motion for leave to amend (ECF No. 23).  For the reasons discussed below, the court grants both motions.

---

[1] As explained in plaintiffs' complaint, injection wells are "used to place fluid underground into porous geologic formations" to dispose of fracking fluid wastes.  ECF No. 1 at n.1.

Background

Plaintiffs have been involved in coordinated protests to challenge injection sites in Kansas.[2]  The protests are filed with the KCC, which is the agency responsible for regulating oil and gas drilling in Kansas.[3]  Plaintiffs filed their complaint on August 1, 2019, alleging Kirk filed a baseless complaint with the Kansas Attorney General claiming they were engaged in the authorized practice of law, purportedly as retaliation for plaintiffs' protest efforts.[4]  Plaintiffs seek compensatory damages, declaratory judgment, and attorneys' fees.[5]

The undersigned U.S. Magistrate Judge, James P. O'Hara, entered a scheduling order on December 18, 2019, setting a deadline for any motions to amend of January 31, 2020.[6]  Discovery began and plaintiffs deposed Kirk on February 12, 2020.[7]  During his deposition, Kirk testified that he met with individual commissioners before reaching out to the Attorney General's Office.[8]  Plaintiffs filed the instant motion on March 3, 2020,

_____

[2] ECF No. 1.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] ECF No. 12.

[7] ECF No. 18 at 4.

[8] Kirk confirms meeting with individual commissioners and refers to the office's decision-makers as "we," which he defines as the entity or office of the KCC.  *See* ECF No. 18-2 at 3.  Defense counsel objected to plaintiffs' counsel's questions regarding the specifics of the conversations on the basis of attorney-client privilege.  *Id.* at 4.

seeking to add these commissioners as defendants: Susan K. Duffy, in her official capacity; Shari Feist Albrecht, in her official and individual capacities; Dwight W. Keen in his official and individual capacities; and Jay Emler, in his individual capacity.[9]

Kirk sought a motion of extension of time to respond, indicating that all four of the proposed additional defendants would be represented by the same counsel, albeit not by Kirk's attorney.[10]  The court granted the extension,[11] and the proposed defendants filed their motion to intervene on March 20, 2020.[12]  On the same day, they also filed an opposition to plaintiffs' motion to amend the complaint.[13]  Plaintiffs oppose their intervention.[14]

<u>Motion to Intervene</u>

Proposed defendants have opposed plaintiffs' motion for leave to file an amended complaint on the basis of futility.  As mentioned earlier, Kirk did not timely file any oppose plaintiffs' motion.[15]  Under Rule 24 of the Federal Rules of Civil Procedure, two types of

---

[9] ECF No. 18.

[10] ECF No. 19.

[11] ECF No. 20.

[12] ECF No. 21.

[13] ECF No. 23.

[14] ECF No. 24.

[15] Furthermore, the law in this district is well-settled that current parties unaffected by a proposed amendment lack standing to assert arguments of futility on behalf of proposed

intervention are recognized: intervention as a matter of right and permissive intervention. Intervenors seek to intervene via both pathways.  But the threshold issue is whether the intervenors have standing to object.  Courts in this district have held that non-parties generally do not have standing to oppose a motion to amend when they have not intervened.[16]  As non-parties, they do not have standing under Rule 15 to object and have "no absolute right to participate in the motion hearing until they are formally added to the litigation through a granted amendment."[17]

Here, although the proposed defendants are not currently parties to this action, they've moved to intervene for the purpose of opposing plaintiffs' motion.  Courts in this district, without squarely deciding the issue, have left open whether non-parties are deemed to have standing by virtue of moving to intervene.[18]  Previously, parties seeking to intervene under Rule 24 did not need to establish Article III standing "so long as another

---

defendants.  *See Coleman v. Apple Eight Hosp. Mgmt., Inc.*, No. 6:16-CV-01343-JTM, 2017 WL 1836974, at *2-3 (D. Kan. May 8, 2017).

[16] *See Smith v. TFI Family Servs., Inc.*, No. 17-02235-JWB-GEB, 2019 WL 1556250, at *3 (D. Kan. Apr. 10, 2019) (holding the parties did not have standing when the non-parties failed to move to intervene and failed to substantively address their authority to oppose the motion to amend); *Abraham v. Hampton Inn Corp.*, No. 18-2137-DDC, 2018 WL 2926582, at *2, n. 16 (D. Kan. June 7, 2018) (noting proposed defendants had not established standing to object to plaintiff's motion to amend or filed a motion to intervene).

[17] *See Clayton v. District of Columbia*, 999 F. Supp. 2d 178, 182 n.6 (D.D.C. 2013) (quoting Motion Practice, 9–80 (David F. Herr et al., eds., 5th Ed. Supp. 2012).

[18] *Smith*, 2019 WL 1556250, at *3 ("This court recognizes that some courts, despite the lack of standing, will consider a non-party's opposition to a motion to amend because the non-party could have moved to intervene under Rule 24(b)").

4

party with constitutional standing on the same side as the intervenor remains in the case."[19] Since then, the Tenth Circuit has clarified that intervenors still must prove separate Article III standing by asserting an injury in fact of their own when they are pursuing relief that is different from that which is sought by a party with standing.[20]  Here, the intervenors appear to be seeking the same relief as Kirk (i.e., ultimately the dismissal of this case), and thus the undersigned is satisfied that they don't have to prove separate Article III standing.  For the purposes of this motion, proposed defendants have standing to move to intervene.

<u>Rule 24(a): Intervention of Right</u>

Next, the court moves to whether proposed defendants have met their burden to intervene.  Under Rule 24(a)(2), a court must permit anyone to intervene who, on a timely motion, "(1) claims an interest relating to the property or transaction that is the subject of the action, and (2) is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless (3) existing parties adequately

---

[19] *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 912–13 (10th Cir. 2017) (noting that the Supreme Court held "any person invoking the power of a federal court must demonstrate standing to do so," including all intervenors, in *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2659–65 (2013)).    *Hollingsworth* abrogated in part *San Juan v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007), which held "parties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing so long as another party with constitutional standing on the same side as the intervenor remains in the case."

[20] The Supreme Court later clarified that the requirement of Article III standing applies "if the intervenor wishes to pursue relief not requested by a plaintiff," which is the current standard used by the Tenth Circuit.  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1647, 198 L. Ed. 2d 64 (2017)); *Kane Cty., Utah v. United States*, 928 F.3d 877, 886 (10th Cir. 2019) ("[T]en years later, the Supreme Court modified our 'piggyback standing' rule, holding that an intervenor as of right must 'meet the requirements of Article III if the intervenor wishes to pursue relief not requested' by an existing party.").

represent that interest."[21]  The burden is on the movant to show these elements are met.[22]

"Failure to satisfy any one of the requirements is fatal to the application, and [the Court]

need not reach the remaining elements if one of the elements is not satisfied."[23]

Proposed defendants have offered little-to-no analysis of these factors that the court

can glean.  Their motion to intervene merely quotes Rule 24(a)(2), then references their

opposition to the motion to amend and the arguments included therein.  Therefore, the court

attempts to conduct the analysis on its own.  The first element, timeliness, is established.

Proposed intervenors filed their motion to amend on March 20, 2020, in response to

plaintiffs' motion for leave to amend to add them as defendants on March 3, 2020.

The court addresses the second and third elements together since they are closely

related.  To satisfy these elements, the party seeking to intervene bears a "minimal" burden

to show that it has an interest that could be adversely affected by the litigation.[24]  It is a

highly fact-specific determination, aimed to be a "practical guide to disposing of lawsuits

by involving as many apparently concerned persons as is compatible with efficiency and

---

[21] Fed. R. Civ. P. 24(a)(2); *see also WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009).

[22] *City of Stilwell, Okla. v. Ozarks Rural Elec. Coop.*, 79 F.3d 1038, 1042 (10th Cir. 1996).

[23] *Marie v. Moser*, No. 14-cv-02518-DDC, 2014 WL 7272565, at *2 (D. Kan. Dec. 18, 2014) (quoting *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009)).

[24] *Everest Indem. Ins. Co. v. Jake's Fireworks, Inc.*, No. 19-2620-JAR-ADM, 2020 WL 1503477, at *3 (D. Kan. Mar. 30, 2020); *United States v. Albert Inv. Co.,* 585 F.3d 1386, 1392 (10th Cir. 2009) (quoting *San Juan Cty. v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc)).

6

due process."[25]  The Tenth Circuit has adopted a liberal view in favor of allowing intervention that focuses on the practical effects of the case on the movant.[26]  Plaintiffs are moving to add proposed intervenors as defendants; their potential liability is reasonably construed as an interest that could be adversely affected by the outcome of the litigation. Accordingly, the court is satisfied proposed defendants have an interest in the outcome of the litigation that is sufficient to support intervention as a matter of right.

The final element is whether existing parties adequately represent their interest.  The burden is minimal, and the possibility of divergent interests is enough to satisfy the element.[27]  If the parties' interests are identical, the court may presume adequate representation, but the moving party need "only show the potential for inadequate representation."[28]  Plaintiffs argue proposed defendants "share the same ultimate objective in the litigation."[29]  Plaintiffs point to counsel for Kirk representing proposed defendants' interests thus far in the case.  On the other hand, although all defendants have aligned

---

[25] *Everest Indem. Ins. Co.*, 2020 WL 1503477, at *3 (D. Kan. Mar. 30, 2020) (citing *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019)).

[26] *Design Basics, LLC v. Estate of Aus*, No. 12-2437-JPO, 2014 WL 65754, at *3 (D. Kan. Jan. 8, 2014); *Wyandotte Nation v. Salazar*, No. 11-CV-2656-JAR-DJW, 2012 WL 1231857, at *6 (D. Kan. Apr. 11, 2012) ("While other Circuits require the movant have a "direct, substantial, and legally protectable" (DSL) interest, the Tenth Circuit's emphasis on the practical effect of intervention includes interests broader than—but often inclusive of—DSL interests.").

[27] *Everest Indem. Ins. Co.*, 2020 WL 1503477, at *4.

[28] *Id.*

[29] ECF No. 24 at 3.

interests in defending against plaintiffs' claims, proposed defendants raise the possibility that they and Kirk could ostensibly argue liability rested with each other.[30]  Proposed defendants further argue Kirk is not similarly situated and his interests are not sufficiently aligned with theirs, specifically pointing to Kirk's failure to oppose the motion to amend. On balance, the court agrees with proposed defendants.  Although they have not supported their motion with much detail, the court finds they have met their minimal burden to show the possibility of divergent interests.

Rule 24(b): Permissive Intervention

Because the court grants proposed defendants' motion with respect to intervention as of right, it does not reach the issue of whether they should be allowed to permissively intervene.

IT IS THEREFORE ORDERED that the motion to intervene (ECF No. 21) is granted.

Motion to Amend

Having granted the motion to intervene, the court next turns to the merits of plaintiffs' motion to amend and intervenors' opposition.

Rule 16(b)(4)

Under Fed. R. Civ. P. 15(a)(2), once a responsive pleading has been filed and 21 days have passed, "a party may amend its pleading only with the opposing party's written

---

[30] ECF No. 29 at 4.

consent or the court's leave." Rule 15 dictates the court "should freely give leave when justice so requires."[31] When the deadline set in the scheduling order for amending pleadings has passed, however, Fed. R. Civ. P. 16(b)(4) also is implicated.[32] Rule 16(b)(4) provides that a scheduling order may be modified "only for good cause." Thus, the Tenth Circuit has directed courts to use "Rule 16's good cause requirement as the threshold inquiry to consider whether amendments should be allowed after a scheduling order deadline has passed."[33] As earlier mentioned, in this case the scheduling order set a deadline of January 31, 2020, for the parties to file any motions to amend their pleadings. Because plaintiffs didn't file the instant motion until March 3, 2020, the court will begin its analysis by applying Rule 16's good-cause standard.

To establish "good cause" under Rule 16(b)(4), plaintiffs must show they could not have met the scheduling order deadline for amending pleadings despite their "diligent efforts."[34] In making this showing, they "must provide an adequate explanation for any delay."[35] The court recognizes that "while a scheduling order is not a frivolous piece of

---

[31] Fed. R. Civ. P. 15(a)(2).

[32] *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240-41 (10th Cir. 2014).

[33] *Id.* at 1241. If the court finds good cause lacking, it need not reach the Rule 15(a) issue. *Id.* at 1242.

[34] *Id.* at 1240.

[35] *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009).

paper, idly entered . . . , rigid adherence to the . . . scheduling order is not advisable."[36]
Thus, the good-cause requirement may be satisfied if a party learns new information
through discovery or if the underlying law has changed.[37]   However, "if [the party] knew
of the underlying conduct but simply failed to raise tort claims, however, the claims are
barred."[38]  Ultimately, whether to modify the scheduling order lies within the court's sound
discretion.[39]

Plaintiffs seek to amend their complaint to add proposed defendants.  They argue
they have shown excusable neglect because they did not possess the facts that would
warrant amending their complaint until they deposed Kirk on February 12, 2020.[40]
Defendants don't offer much to rebut this, beyond one sentence stating plaintiffs haven't
provided a basis for establishing excusable neglect.[41]   The court agrees with plaintiffs.
Plaintiffs have demonstrated they acted in good faith to timely schedule Kirk's deposition,
but the date that worked for both parties fell after the deadline to amend pleadings.[42]  Prior

---

[36] *Nevarez v. Cty. of Finney Cty., Kansas*, No. 04-2309-KHV, 2005 WL 8160610, at *1 (D. Kan. Mar. 22, 2005) (quoting *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995)).

[37] *Gorsuch*, 771 F.3d at 1240 (internal citations omitted).

[38] *Id.*

[39] *Paris v. Sw. Bell Tel. Co.*, 94 F. App'x 810, 816 (10th Cir. 2004).

[40] ECF No. 25 at 4.

[41] ECF No. 23 at 3.

[42] ECF No. 18 at 4.

O:\ORDERS\19-2443-HLT-18,21.docx

to the deposition, plaintiffs were unaware of the commissioners' involvement through the pleadings or their pre-filing investigation.[43]   Once plaintiffs learned of the involvement of the commissioners, they filed the instant motion.[44]   The court finds plaintiffs have demonstrated good cause for the delay.

Rule 15(a)

Under Fed. R. Civ. P. 15(a)(2), once a responsive pleading has been filed and twenty-one days have passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Rule 15 dictates the court "should freely give leave when justice so requires."[45]   Although the granting of a motion to amend is within the court's discretion, the Supreme Court has indicated that Rule 15's directive to "freely give leave" is a "mandate . . . to be heeded."[46]   "A district court should refuse leave to amend 'only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'"[47]

---

[43] *Id.* at 5.

[44] *See Coder v. Am. Bankers Ins. Co. of Fla.*, No. 12-2231-EFM, 2013 WL 2151583, at *2 (D. Kan. May 16, 2013) (evidence supporting an affirmative defense was not discovered until depositions that occurred after the deadline for amendments).

[45] Fed. R. Civ. P. 15(a)(2).

[46] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[47] *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (quoting *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005)).

Proposed defendants argue that permitting the amended pleading would be futile. "A proposed amendment is futile if the amended complaint would be subject to dismissal."[48]   In considering whether a proposed amendment is futile, the court uses the same analysis that governs a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim.[49]   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[50]   Therefore, the court will only deny an amendment on the basis of futility when, accepting the well-pleaded allegations of the proposed amended complaint as true and construing them in the light most favorable to the plaintiff, the court determines the plaintiff has not presented "enough facts to state a claim to relief that is plausible on its face."[51]   "The party opposing the proposed amendment bears the burden of establishing its futility."[52]

Proposed defendants oppose the motion to amend on numerous grounds.  First, they argue plaintiffs have failed to state a viable retaliation claim.  They argue plaintiffs' allegations about their meetings regarding plaintiffs' protests are insufficient to state a

---

[48] *Little v. Portfolio Recovery Assocs., LLC*, 548 F. App'x 514, 515 (10th Cir. 2013) (citing *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999)).

[49] *See Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1158 (D. Kan. 2000).

[50] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[51] *Little*, 548 F. App'x at 515 (quoting *Twombly*, 550 U.S. at 570).

[52] *Mars v. Novartis Pharm. Corp.*, No. 11-2555, 2012 WL 1288729, at *2 (D. Kan. April 16, 2012).

claim because (1) proposed defendants have not acted under color of state law;[53] (2) proposed defendants did not bring charges with the Kansas Attorney General and instead merely provided their account of events;[54] and (3) plaintiffs haven't alleged any injury.[55] Plaintiffs argue they have alleged sufficient facts to support their retaliation claim and, to the extent proposed defendants claim their participation is insufficient to confer liability, that should be resolved through a motion to dismiss.[56]

Second, proposed defendants argue they are immune from suit in their official capacities under the Eleventh Amendment and in their individual capacities, based on an qualified-immunity analysis and under case law holding that public officials giving testimony are immune from civil damages.[57]  Plaintiffs argue the intervenors "used their official authority to carry out all of their retaliatory actions,"[58] pointing to the government resources that intervenors used before initiating their complaint.[59]  Plaintiffs allege reports to law enforcement may constitute First Amendment retaliation and argue proposed defendants were acting in their official capacity; specifically, they ask the court "to analyze

---

[53] ECF No. 23 at 7.

[54] ECF No. 23 at 6.

[55] *Id.* at 8.

[56] ECF No. 18 at 6.

[57] ECF No. 23 at 8-11.

[58] ECF No. 25 at 11.

[59] *Id.* at 13.

the government resources and contacts proposed defendants utilized in filing the complaint."[60]   They dispute every immunity defense raised by proposed defendants, extensively briefing the legal grounds on the arguments.

      After reviewing the arguments, there is sufficient evidence here that the undersigned cannot say these claims would not survive a motion to dismiss.  The undersigned agrees with plaintiffs that proposed defendants have essentially asked for dismissal on each issue in the context of a motion to amend.[61]   This is not the stage to resolve these issues.[62]  Recognizing that there is no pending motion to dismiss, the undersigned nonetheless concludes the legal arguments made in the parties' briefing are better suited for dispositive motions.[63]   The presiding U.S. District Judge, Holly L. Teeter, may ultimately decide on a more developed record that plaintiffs have failed to state a plausible claim against the new defendants.  But on the face of the proposed amended complaint, they could have some

---

[60] *Id.*

[61] *See Goings v. Sumner Cty. Dist. Attorney's Office*, No. 13-1107-RDR, 2013 WL 5406444, at *2 (D. Kan. Sept. 25, 2013) ("[T]he defendants' attempt to argue the merits of their motion to dismiss in the context of plaintiff's motion to amend raises practical issues concerning judicial resources and the creation of a coherent record of the pleadings.)."

[62] *F.D.I.C. v. Renda*, No. CIV. A. 85-2216-O, 1987 WL 348635, at *9 (D. Kan. Aug. 6, 1987) ("Defendants ask the court to resolve numerous complex legal and factual issues in their favor in the context of a motion to amend. We obviously are not in a position to resolve those issues at this stage of the case. Defendants' suggestion that leave to amend should be denied on the ground of futility is thus not well taken and the court shall grant plaintiff's motion for leave to file a second amended complaint.").

[63] *Terracon Consultants, Inc. v. Drash*, No. 12-2345-EFM, 2013 WL 1633510, at *1 (D. Kan. Apr. 16, 2013) (arguments opposing the plaintiff's motion to amend were dispositive and duplicative of those in the motion to dismiss).

O:\ORDERS\19-2443-HLT-18,21.docx

liability for the alleged acts of retaliation. The proposed amended complaint adequately alleges proposed defendants collaborated with Kirk to investigate plaintiffs and decide whether and how to file their complaint.[64] The amended complaint includes numerous allegations of joint decisions among defendants, specific dates of communications and meetings involving all defendants, and the use of official KCC e-mail channels.[65] In the end, the undersigned cannot conclude plaintiffs' proposed amended complaint could not withstand a motion to dismiss.

IT IS THEREFORE ORDERED that plaintiffs' motion for leave to file an amended complaint (ECF No. 18) is granted. Plaintiffs shall file their amended complaint as a separate docket entry by **April 27, 2020**. Unless counsel of record for all of the parties named in the amended complaint jointly e-mail a proposed amended scheduling order to the undersigned's chambers by **May 4, 2020**, all deadlines and deadlines in the current scheduling order (ECF No. 12) will remain operative.

Dated April 22, 2020, at Kansas City, Kansas.

　s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[64] ECF No. 18-1 at 10-11.

[65] *Id.*

O:\ORDERS\19-2443-HLT-18,21.docx