# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Cindy Hoedel and Scott Yeargain,<br><br>*Plaintiffs*,<br><br>v.<br><br>Honorable Susan K. Duffy, Honorable Shari Feist Albrecht, and Honorable Dwight D. Keen, in their official capacities as Commissioners for the Kansas Corporation Commission, and Shari Feist Albrecht, Dwight D. Keen, Jay Emler, and Dustin Kirk, each in their individual capacities.<br><br>*Defendants*. | ) | 2:19-cv-02443-HLT-JPO |

**FIRST AMENDED COMPLAINT**

Plaintiffs Cindy Hoedel and Scott Yeargain, by and through their attorneys, hereby assert this Complaint against the Honorable Susan K. Duffy, Honorable Shari Feist Albrecht, and Honorable Dwight D. Keen in their official capacities as Commissioners of the Kansas Corporation Commission, present Commissioners Shari Feist Albrecht, Dwight D. Keen, and former Commissioner Jay Emler each in their individual capacities, and Mr. Dustin Kirk, former Deputy General Counsel of the Kansas Corporation Commission, in his individual capacity, and state as follows:

Nature of the Action

1. This action arises under the First and Fourteenth Amendments of the Constitution of the United States, which deprivation of rights is actionable under 42 U.S.C. § 1983.
2. During 2017 and 2018, the Kansas Corporation Commission ("KCC") was regularly made aware of instances where a non-attorney was accused of trying to represent a party in commission proceedings.
3. In or around May 2018, Commissioners Emler, Albrecht, and Keen (collectively, "the Defendant Commissioners"),[1] were informed by their counsel Defendant Dustin Kirk that Plaintiffs were giving each other advice and providing assistance to each other in filing protests to injection well[2] applications.
4. After consulting the Defendant Commissioners and acting both on their behalf and on behalf of the KCC, Defendant Kirk contacted the Kansas Attorney General's Office to file a baseless consumer protection complaint against Plaintiffs Hoedel and Yeargain in retaliation for their efforts protesting injection well applications and associating with other concerned citizens for the purpose of vindicating their rights before the KCC.
5. Defendants' complaint alleged that Plaintiffs Hoedel and Yeargain had engaged in the unauthorized practice of law because they shared information, advice, and sample filings with other concerned citizens protesting injection well applications pending before the KCC.

---

[1] Commissioners Albrecht and Keen—who at all relevant times were and continue to be commissioners of the KCC— are sued both in their official and individual capacities. Former KCC Chair Jay Emler is sued in his individual capacity based on his conduct while in office, but the official capacity claim against the KCC Chair passes to Defendant Emler's successor, Commissioner Duffy, who is sued in her official capacity only. All of these present and former commissioners are included in the appellation, "Defendant Commissioners."

[2] An injection well is used to place fluid underground into porous geologic formations. Injection wells are used to "dispose" of fracking fluid wastes.

Defendants did not review the unauthorized practice of law statute and had no legitimate basis for believing Ms. Hoedel or Mr. Yeargain had violated any provision of the law.

6. The investigation Defendants initiated has chilled Plaintiffs' First Amendment protected petition activities, undermined their efforts to associate for the purpose of obtaining legal redress, and cost Ms. Hoedel $20,000 in lost income. Defendants' actions also caused both Hoedel and Yeargain immense anxiety and emotional distress.

7. Plaintiffs face an ongoing threat of future retaliation by Defendant Commissioners evidenced by the fact that the Defendant Commissioners' spokeswoman asserted their right to initiate future investigations into protesters for their advocacy in KCC proceedings. Additionally, Defendant Commissioners have continued their practice of targeting and scrutinizing oil injection well protesters, maintaining a list of protesters with whom staff are prohibited from speaking.

Jurisdiction and Venue

8. The Court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1331 because it involves the deprivation of rights secured by the United States Constitution in violation of 42 U.S.C. §1983.

9. This Court has personal jurisdiction over Defendants because they reside in and conduct business in the State of Kansas.

10. Venue is proper in this district because the violations took place in this district and the Defendants reside and/or do business in this district.

## Parties

11. Plaintiff Cindy Hoedel is a Kansas resident who lives in Chase County. She is a contract researcher and journalist who spent twenty years working for the *Kansas City Star*. Hoedel became interested in KCC proceedings in 2017 after she experienced earthquakes at home caused by oil drilling. She filed a number of protests with the KCC to oppose injection well sites near her home in Mattfield Green, Kansas, and has coordinated with fellow concerned citizens to file objections to proposed injection well applications across Kansas. As a result of Defendants' retaliation, Hoedel has lost income, experienced anxiety and emotional distress, and been unable to continue her collaborative work with other concerned citizens seeking redress before the KCC.

12. Plaintiff Scott Yeargain is a Kansas resident who lives in Franklin County. He has a PhD in Philosophy and lives on a small farm outside of Ottawa, Kansas. He has protested over a dozen injection well applications in KCC proceedings since 2016. Yeargain has coordinated with other protestants challenging injection sites in KCC proceedings. Defendants' retaliation has undermined Mr. Yeargain's ability to collaborate with other protesters seeking legal redress before the KCC.

13. Defendant Dustin Kirk is a resident of Kansas and, at all relevant times, was the Deputy General Counsel for KCC and acting under the color of state law.

14. Defendant Commissioner Susan Duffy is the Chair of the Kansas Corporation Commission. She is sued in her official capacity.

15. Defendant Commissioner Shari Albrecht is a Commissioner for the Kansas Corporation Commission. She is sued in her individual and official capacities. At all relevant times Commissioner Albrecht was acting under the color of state law.

16. Defendant Commissioner Dwight Keene is a Commissioner for the Kansas Corporation Commission. He is sued in his individual and official capacities. At all relevant times Commissioner Keene was acting under the color of state law.
17. Defendant Jay Emler was the Chair of the Kansas Corporation Commission from 2014 to 2019. He is sued in his individual capacity. At all relevant times Defendant Emler was acting under the color of state law.

## Factual Allegations

***KCC Oil Protests***

18. KCC is the state agency responsible for regulating oil and gas drilling in Kansas. An oil or gas operator must file an application for permit with the KCC to open an injection well.
19. As part of the permitting process, the oil company must notify surrounding landowners and the KCC provides notice to the general public. Interested parties have the right to protest applications if they can articulate a reason why the proposed injection plan will damage oil, gas, or water resources. If a protest is filed, KCC can hold a hearing at which all interested parties can participate after being provided notice.
20. Prior to a KCC hearing, it is common for KCC to convene a prehearing conference. The Commission's staff attorneys preside over the prehearing conferences. KCC uses prehearing conferences to schedule pre-hearing deadlines, consolidate protests, and identify witnesses.
21. After the prehearing conference, the oil company applying to the KCC can move to dismiss protestants who lack standing or have otherwise improperly filed a challenge. Protestants can file response briefs defending their right to be involved. They can also file pre-written testimony and request written discovery.

22. The full commission presides over injection well hearings and will issue written findings and recommendations ruling on protestants' standing and determining whether to approve or deny an injection well application.

***Hoedel Protests***

23. On February 9, 2017, Ms. Hoedel filed her first protest with KCC opposing Quail Oil's application to open a well in Morris County. Hoedel's protests received significant media coverage and increased public scrutiny of the KCC's permitting process.

24. In June 2017, Ms. Hoedel filed a protest challenging an injection well application in Greenwood County. Hoedel coordinated her complaint filing with 9 other individual protestants. Defendant Kirk was the presiding officer in the action and convened the prehearing conference call. At no point in the proceedings did Defendant Kirk express concerns that Ms. Hoedel's joint participation in the proceedings constituted the unauthorized practice of law.

25. Ms. Hoedel appeared before Defendant Commissioners several times for oil injection proceedings.

26. Throughout 2017 and 2018, Ms. Hoedel's activism before the commission received consistent press coverage, including her discovery that KCC had improperly issued permits in the past.[3]

27. In the Spring of 2018, Ms. Hoedel filed protests against RJM Company's applications for two injection sites in Barton County and Defendant Kirk was assigned as the presiding

[3] Celia Llopis-Jepsen, *Kansas Energy Officials Review Legal Options After Errors Found In Oil Wastewater Permits*, KCUR 89.3 (Nov. 1, 2017), *available at* https://www.kcur.org/post/kansas-energy-officials-review-legal-options-after-errors-found-oil-wastewater-permits.

officer in the prehearing phone conferences in both matters. A combined 40 protestants objected to RJM's applications.

28. On May 7 and 8, 2018, Ms. Hoedel sent emails regarding the RJM Company proceedings. In her May 7, 2018 email, Ms. Hoedel notified the other protestants that they would need to join the pre-hearing conference to ensure that they would not be removed from the docket. In her May 8, 2018 email, Ms. Hoedel notified the other protestants that she typically pre-files testimony, offering to provide a sample to other protestants so they could "write whatever you want to say." Defendant Kirk was copied on both emails.

29. After receiving Ms. Hoedel's emails but on or before May 14, 2018, Defendant Kirk met with each of the Defendant Commissioners regarding his concerns that Ms. Hoedel was coordinating with other protesters.

30. On May 14, 2018, Defendant Kirk emailed Jeffrey Chanay— Chief Deputy Attorney General of Kansas— to express that he and the Defendant Commissioners were concerned that Ms. Hoedel had engaged in the unauthorized practice of law. The e-mail was sent by Defendant Kirk on behalf of the Defendant Commissioners.

31. On May 15, 2018, Defendant Kirk presided over the pre-hearing conference call for the RJM applications. At no point did Mr. Kirk express a concern that Ms. Hoedel's coordinated efforts with fellow protestants constituted the unauthorized practice of law. At no point on the call did Hoedel represent that she was speaking on behalf of any of the other protestants.

32. On June 12, 2018, Defendant Kirk filed a formal complaint against Ms. Hoedel with the Attorney General for engaging in the unauthorized practice of law, attaching as evidence her May 7 and May 8 emails offering a written testimony sample and informing people they must attend the call to avoid being removed from the docket.

***Yeargain Protests***

33. Mr. Yeargain and his wife, Polly Shteamer, have filed a number of protests challenging injection applications to KCC, including a number of successful challenges that caused an oil company's application to be denied.

34. In May 2018, Mr. Yeargain was one of several protestants opposing Utah Oil's injection well application. Defendant Kirk was the presiding officer in the matter.

35. Defendant Kirk indicated that the pre-hearing conference might occur when Mr. Yeargain's co-protestants Ken and Susan Petersen would be travelling abroad. Because the conference only concerned scheduling, they asked Mr. Yeargain if he could stand in for them. Mr. Yeargain responded that he did not know whether he would be permitted to cover the call but told the Petersens that they could ask Defendant Kirk.

36. Ken Petersen emailed Defendant Kirk on May 12, 2018, explaining their conflict and that they would like to designate Mr. Yeargain to relay their dates of availability during the preconference hearing.

37. Defendant Kirk spoke with Defendant Commissioners regarding Mr. Yeargain's potentially assisting the Petersens on or before May 14, 2018.

38. On May 14, 2018 at 2:53 PM, Defendant Kirk replied to Mr. Petersen that "Mr. Yeargain is not a Kansas licensed attorney and therefore cannot represent other individuals in these proceedings…I cannot guarantee that Mr. Yeargain's participation on your behalf will secure your position in the docket."

39. Thirteen minutes later, Defendant Kirk emailed Chief Deputy Attorney General, Jeffrey Chanay, expressing a concern about a "hot topic" issue in the KCC's quasi-judicial

proceedings. The hot topic to which Defendant Kirk was referring was environmental advocates filing oil injection well protests.

40. Chanay referred Defendant Kirk to Jim Welch, the Consumer Protection Division Deputy.

41. On June 12, 2018, Defendant Kirk filed a formal complaint with the Attorney General's office alleging that Mr. Yeargain had engaged in the unauthorized practice of law, citing Ken Petersen's May 14th email as his only evidence.

***Non-Attorney Individuals Representing Other Parties before the KCC***

42. The KCC regularly encounters individuals without law licenses attempting to appear on behalf of corporate oil injection well applicants in KCC proceedings.[4]

43. Defendant Commissioners have become aware of individuals without law licenses appearing on behalf of corporate oil injection well applicants through objections of staff counsel and prehearing officers.[5]

44. On information and belief, Defendant Commissioners have not reported individuals attempting to appear on behalf of corporate oil injection well applicants to the Kansas Attorney General's Office for the unauthorized practice of law.

45. Since at least 2017, Defendant Commissioners have also encountered individuals without law licenses attempting to appear on behalf of other individuals who had filed protests to oil injection well applications.

46. In or around November 2017, Defendant Kirk and Defendant Commissioners received notice in the form of a motion to dismiss that two non-attorneys were attempting to appear on behalf

---

[4] *See*, *e.g.*, *In re Mem. Partnership LLP*, 17-CONS-3398-CPEN, "Order Designating Prehearing Officer and Setting Prehearing Conference"; *In re Prarie Gas Operating LLC*, 18 -CONS-3181-CPEN, "Motion Eliminate Conf. Designation and to Require Operator's Attorney to Enter Appearance to Avoid Default."
[5] Kirk. Depo. Tr. at 89:15-25.

of other oil injection well protesters.[6] The motion to dismiss accused the two non-attorneys of engaging in the unauthorized practice of law. Defendants did not contact the Attorney General's Office to report their attempt to represent other protesters.

***Defendant Commissioners and Defendant Kirk Determine to Report Plaintiffs***

47. Defendant Kirk spoke with Defendant Commissioners regarding Plaintiffs' protest activities in or around early May 2018 and prior to contacting the Attorney General's Office.[7]

48. Defendant Kirk's communications with the Defendant Commissioners regarding Ms. Hoedel and Mr. Yeargain's protest activities were made within his capacity as counsel to the KCC.[8]

49. Defendant Kirk's email to Deputy Attorney General Chanay was sent in his capacity as counsel to the Defendant Commissioners and on behalf of the KCC.

50. In all of Defendant Kirk's communications with the Attorney General's Office, he was acting on behalf of the agency, consistently using "we" to refer to the KCC's opposition to Ms. Hoedel and Mr. Yeargain's protest activity[9] as well as the agency's willingness to provide additional information necessary to perpetuate the investigation.[10]

---

[6] *In re Cross Bar Energy LLC*, 17-CONS-3689-CUIC, "Applicant's Renewed Motion of Dismissal of All Protests"
[7] Kirk Depo. Tr. at 70:1-5 ("Q: […] you said you met with -- the individual commissioners, prior to reaching out to the Attorney General's office; is that correct? A. That's correct").
[8] *Id.* at 71:3-19 ("Q. In your conversations with the individual commissioners, did they suggest that you reach out to the Attorney General? MR. COOPER: That one, I'm going to have to object on the basis of attorney/client privilege. […] It's not my privilege, it's his privilege. […] A: I cannot answer").
[9] *See*, *e.g.*, May 14, 2018 Email from Dustin Kirk to Jeffrey Chanay, "We know that the Attorney General would have jurisdiction but we were unsure how to handle the matter currently"; Kirk Depo. Tr. at 70:17-23 ("Q. […]Who is we in this -- particular sentence, who is the we you're referring to? A. I probably would be referring to the -- the KCC, in general. Q. Okay. So the entity? A. Correct.").
[10] *See*, *e.g.*, June 12, 2018 Email from Dustin Kirk to Lynette Baker, "I realize that this is pretty minimal to go on at this point but we do feel the relevant conversations demonstrate that a non-licensed attorney is drafting or sharing non-legal proceedings…we can help garner more KCC pleadings and emails on these particular dockets should that be helpful."

***KCC's Retaliatory Complaint to the Attorney General***

51. Defendants spent nearly a month developing their allegations against Ms. Hoedel and Mr. Yeargain. Following his initial outreach to Mr. Chanay on May 14, 2018, Defendant Kirk spoke with Lynette Baker in the Attorney General's Office on June 11, 2018 and formally filed a complaint on June 12.

52. Defendant Kirk's email to Ms. Baker explained that he knew the emails and pleading he provided as evidence of the unauthorized practice of law "was pretty minimal to go on" but insisted "we do feel that the relevant conversations demonstrate that a non-licensed individual is drafting or sharing legal pleadings for filing and use." The "we" referred to Defendant Commissioners and Mr. Kirk.

53. All of Defendant Kirk's correspondence was conducted from his official KCC email address (d.kirk@kcc.ks.gov) and all communications with the Attorney General's Office were made in his capacity as the preconference hearing officer for KCC.

54. As an attorney, Defendant Kirk knew, should have known, or could have easily determined through minimal research that Ms. Hoedel and Mr. Yeargain's conduct did not constitute the unauthorized practice of law.

55. Defendant Kirk did not review the unauthorized practice of law statute prior to filing KCC's complaint with the Attorney General's Office nor did he conduct any research.

56. The Defendant Commissioners are also attorneys with several staff counsel at their disposal. They knew, should have known, or could have easily determined through minimal research that Ms. Hoedel and Mr. Yeargain's conduct did not constitute the unauthorized practice of law.

57. The Defendant Commissioners frequently encountered individuals without a law license attempting to appear on behalf of a party in agency proceedings, yet, on information and belief, never contacted the Attorney General's Office about their conduct.

***Plaintiffs Suffer Economic, Emotional, and Reputational Harms as a Result of Defendants' Retaliatory Complaint.***

58. On July 12, 2018, Shawna Meyer of the Attorney General's Office notified Mr. Yeargain and Ms. Hoedel that they were under investigation and requested a response. When Ms. Hoedel requested a copy of the complaint, Ms. Meyer sent her the May 7 and May 8, 2018 emails that Defendants attached to their complaint as evidence but nothing else.

59. It took Ms. Hoedel six days to discover the origin and nature of the complaint. The Attorney General's Office insisted that she provide a response to the allegations.

60. The Attorney General's Office closed its investigation into Ms. Hoedel in September 2018. For the duration of the investigation, Ms. Hoedel experienced significant anxiety and emotional distress as a result of the investigation. She agonized about the impact a criminal record or civil action against her would have on her work and the expenses related to defense of such an action. Ms. Hoedel was also running for a seat on the Chase County Commission at the time—a race which was adversely impacted and ultimately undermined by Defendants' allegations. Additionally, Ms. Hoedel lost $20,000 worth of income from her work as a freelance public relations consultant, lost her race for county commissioner and the associated salary, and lost future income from clients not wanting to do business with her on the basis of allegations that she broke the law.

61. Defendants' complaint and the resultant Attorney General investigation also undermined Ms. Hoedel's environmental advocacy efforts. Ms. Hoedel has been successful in her advocacy because she has built a reputation as a reasonable, respectful, and law-abiding citizen.

Defendants' allegations and the subsequent Attorney General investigation portrayed Ms. Hoedel as an extreme radical and compromised her credibility as an advocate.

62. The Attorney General's office never notified Mr. Yeargain that the investigation into his activities had been closed or otherwise ceased. As far as Mr. Yeargain is aware, the investigation Defendants initiated is still ongoing.

63. Mr. Yeargain also experienced mental distress as a result of the investigation. He worried about his ability to pay the costs of his legal defense and the impact the investigation would have on his standing in the community. Mr. Yeargain rents property and sells cows, both business endeavors where his reputation for integrity and good faith are critical for success. He also holds seats on both the Kansas Water Office advisory board for Marias des Cynges and the Franklin County Democratic Central Committee. Both of Mr. Yeargain's public service positions require him to remain in good moral standing in his community.

64. Mr. Yeargain's fears about damage to his reputation also extend to the efficacy of his environmental advocacy work. A reputation for integrity and honesty is essential to Mr. Yeargain's success challenging injection wells before the KCC where the accuracy of his data and legal applications are regularly at issue. The same reputation of integrity is necessary to mobilize other citizens who need to be convinced about the potential threat certain injection wells might pose.

***Ongoing Violations of Plaintiffs' First Amendment Rights***

65. Both Ms. Hoedel and Mr. Yeargain ceased or curtailed their coordinated advocacy activities before the KCC during the investigation and have significantly reduced efforts to provide assistance to fellow advocates or jointly protest injection sites out of a fear that they would draw additional complaints for alleged unauthorized practice of law. A number of other

advocates have also expressed reservations about participating in hearings for fear of being the subject of investigation.

66. As a result of Defendants' complaint, Ms. Hoedel has been reluctant to revive any joint advocacy efforts before the KCC and has taken proactive steps to minimize her association with other protestants. In particular, Ms. Hoedel has dropped communication with nearly 50 citizens and more than 20 lawmakers that she had previously rallied in support of her KCC advocacy work to protect them from possible retaliation. Additionally, as a result of Defendants' conduct, she started noting that she is not a lawyer on all of her communications with the KCC.[11]

67. Mr. Yeargain has also been fearful to continue collaborative protest work before the KCC. He warns other advocates that they may be targeted if they participate in protests.

68. Defendants' complaint has therefore weakened Plaintiffs' ability to effectively protest well applications and chilled the exercise of their First Amendment right to join together for the purpose of obtaining legal redress.

69. Both Ms. Hoedel and Mr. Yeargain fear they will be reported to the Attorney General for associating with other oil injection protesters in the future.

70. When asked about the Attorney General investigation into Ms. Hoedel and Mr. Yeargain, Defendant Commissioners' spokeswoman Linda Berry affirmed that attorneys within the agency can file an accusation of unauthorized practice of law against oil injection protesters with the Attorney General's Office at any time.[12] Because Defendant Commissioners are

---

[11] Kansas City Star Editorial Board, *Activists raised questions about a state agency. Now, the Kansas AG is investigating them*, KANSAS CITY STAR (Aug. 22, 2018), *available at* https://www.kansascity.com/opinion/editorials/article217065085.html.

[12] Id.

attorneys, Ms. Hoedel fears that, through this statement, they have asserted their right to report her activities in the future.

71. On information and belief, Defendant Commissioners have continued to target Mr. Yeargain and other oil injection protesters with retaliation for their participation in protected First Amendment activity by placing them on a "no-contact list" for KCC staff.

## Claims for Relief

### Count 1
### Against all Defendants
### (Violation of U.S. Const. Amend. I)

72. Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs as if fully set forth herein.

73. The foregoing actions by the Defendants violate 42 U.S.C. § 1983 and the First Amendment of the United States Constitution.

74. The First Amendment of the United States Constitution guarantees all citizens freedom of association and the right to petition the government, including the right to associate with others for the purpose of assisting with litigation.

75. The First Amendment also protects Plaintiffs against retaliation for engaging in constitutionally protected activity.

76. Defendants' baseless complaint to the Kansas Attorney General in response to Plaintiffs' assistance to other advocates and coordinated efforts to protest injection wells has caused them economic, emotional, and reputational damages, chilled their advocacy efforts before the KCC, and constitutes unlawful retaliation under the First Amendment.

77. Defendants' continuing retaliatory conduct also violates Plaintiffs' rights to free speech, association, and to petition the government for redress guaranteed by the First and Fourteenth Amendments of the Constitution.

Prayer for Relief

WHEREFORE, Plaintiffs demand judgement against Defendants on each Count of the Complaint and the following relief:

a. Declare that Defendants' initiation of the investigation into Ms. Hoedel and Mr. Yeargain for the unauthorized practice of law violated the First Amendment of the Constitution;
b. Enjoin Defendant Commissioners from initiating future unauthorized practice of law investigations into Plaintiffs for engaging in protected First Amendment activity;
c. Require Defendant Commissioners to cease targeting Plaintiffs and other oil injection well protesters with retaliation for engaging in protected First Amendment activity before the KCC;
d. Require Defendant Commissioners to withdraw their Attorney General complaint against Scott Yeargain, to the extent an investigation is still pending;
e. Require Defendant Commissioners to adopt a uniform policy on appropriate steps to take when non-attorneys attempt to appear on behalf of a party in Kansas Corporation Commission proceedings;
f. Require Defendant Commissioners to cease threatening oil injection protesters that they will file future complaints with the Attorney General's office because of their First Amendment protected activity;
g. Order Defendants Kirk, Albrecht, Keene, and Emler, in their individual capacities, to pay compensatory damages resulting from their violations of Plaintiffs' constitutional rights and the resulting loss of income, harm to their reputation, and emotional distress;
h. Award Plaintiffs attorneys' fees as provided for under 42 U.S.C. §1988; and
i. Any such other and further relief as the Court deems just and proper.

Dated: April 27, 2020

Respectfully Submitted,

By: /s/ Lauren Bonds
Lauren Bonds, KS No. 27807
Zal Kotval Shroff, KS No. 28013
ACLU Foundation of Kansas
6701 W. 64th Street, Ste. 210
Overland Park, KS 66202
Phone: (913) 490-4100
Fax: (913) 490-4119
lbonds@aclukansas.org
zshroff@aclukansas.org

ATTORNEYS FOR THE PLAINTIFFS

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, on this 27th day of April, 2020, which will send a notice of electronic filing to all attorneys of record.

/s/ Zal K. Shroff
Zal K. Shroff